# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SWISS INSTITUTE OF BIOINFORMATICS, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Action No. 13-1274 (RBW) |
| GLOBAL INITIATIVE ON SHARING ALL INFLUENZA DATA, | ) ) ) ) | |
| Respondent. | ) ) | |

## MEMORANDUM OPINION

This case arises out of the petitioner's, the Swiss Institute of Bioinformatics, petition to confirm an arbitration award issued by the Geneva Chamber of Commerce against the respondent, the Global Initiative on Sharing All Influenza Data. See generally Petition of Swiss Institute of Bioinformatics To Confirm a Foreign Arbitral Award ("Petition"). Currently before the Court is the petitioner's Motion for Default Judgment and To Confirm a Foreign Arbitral Award ("Pet'r's Mot."); see also Memorandum in Support of Motion for Default Judgment and To Confirm a Foreign Arbitral Award ("Pet'r's Mem."). For the reasons set forth below, the Court finds that the petitioner's motion must be granted.[1]

## I.  BACKGROUND

The petitioner "is an academic, non-profit foundation formed in 1998 under the laws of Switzerland," where it also has its principal place of business. Petition ¶ 1. The respondent "is a

---

[1] In considering the motion, the Court relied solely upon the petitioner's petition, motion, and the declarations and exhibits attached thereto. The respondent has submitted nothing to the Court to date.

non-profit corporation formed in 2006 under the laws of the District of Columbia," which is also its principal place of business.  Id. ¶ 2.

The petitioner and the respondent "entered into an agreement, the EpiFlu Database Agreement ('Agreement'), on February 29, 2008, under which [the petitioner] was to set-up and maintain the EpiFlu Database and [the respondent] was to promote the database."  Id. ¶ 6.  The Agreement contained an arbitration provision, which stated:

> This Agreement shall be interpreted, construed, and governed by the laws of Switzerland, without regard to its conflicts of laws principles.  The parties agree that in any dispute arising out of this Agreement, exclusive jurisdiction and venue shall be in Geneva under the procedure of the Geneva Chambers of Commerce. The proceedings will be conducted in English.

Id. ¶ 7 (citing August 20, 2013 Declaration of Charles H. Camp ("2013 Camp Decl."), Exhibit ("Ex.") 1 (Agreement) ¶ 19).  The Agreement further required the respondent to pay the petitioner "CHF 55,000 (Swiss Francs) upon signing the Agreement and CHF 80,000 as a 'down payment against overhead costs described in Exhibit 2.'"  Id. ¶ 8 (quoting 2013 Camp Decl., Ex. 2 (Final Award) ¶ 104).  The respondent also "contracted to pay the pro rata costs of work performed by [the petitioner's] employees on the Database," including "overhead, Service costs, Software costs, and Training costs."  Id. ¶ 9 (citing 2013 Camp Decl., Ex. 2 (Final Award) ¶ 283).  The petitioner "developed the Database in accordance with the Agreement," id. ¶ 11 (citing 2013 Camp Decl., Ex. 2 (Final Award) ¶ 108), and the Arbitrator found that "the Database 'seemed to be fulfilling the purpose for which it was designed,'" id. ¶ 12 (quoting 2013 Camp Decl., Ex. 2 (Final Award) ¶ 109).  Aside from a single CHF 500 payment, the respondent has made no payments to the petitioner despite requests to do so.  Id. ¶¶ 10, 13-14, 16-17. "[T]he petitioner terminated the Agreement on June 11, 2009, . . . removed access to the EpiFlu

database from the [respondent's] portal and redirected users to its own web portal," and additionally "emailed [users] to inform them [of] the access change." Id. ¶¶ 17-19.

"In response, on August 20, 2009, [the respondent] filed a Notice of Arbitration with the Geneva Chamber of Commerce, Industry and Services[]." Id. ¶ 20. The arbitrator found in favor of the petitioner and "ordered [the] [r]espondent to pay [the] [p]etitioner . . . the following amounts: (a) CHF 576,906.22 plus 5% interest per annum from April 1, 2010; plus (b) CHF 191,914.75 and €30,390 plus 5% interest per annum from July 8, 2012; and (c) 75% of the remaining costs of the arbitration and 75% of the [p]etitioner's legal costs." Id. ¶ 31.

The petitioner subsequently filed this action seeking to confirm the Final Award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, New York, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38 (the "New York Convention") and Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-08 (2012). Id. ¶ 3. The petitioner contends that the respondent owes it $999,450.32 in accordance with the Final Award.[2] Although the petitioner filed an affidavit of service indicating that the respondent has been served with the summons and the petition, see ECF No. 4 (Affidavit of Service) at 1, the respondent has neither entered an appearance nor answered the petition. The Clerk of this Court entered a default against the respondent on September 17, 2013. ECF No. 6 (Default) at 1. The petitioner thereafter filed its motion for entry of a default judgment. Pet'r's Mot. at 1. In its motion, the petitioner represents that it has incurred an additional $35,712.93 in attorney's fees and expenses in prosecuting this action since the issuance of the Final Award, of which it seeks a total of $26,784.69, which is equal to seventy-five percent of the attorney's fees and costs

---

[2] The petitioner sets forth the specific amounts and the conversion from Euros and Swiss Francs to United States Dollars in a memorandum of law submitted with its petition. See Petition, Ex. 1 (Memorandum of Points and Authorities in Support of Petition To Confirm a Foreign Arbitral Award) at 6 n.1.

incurred.  <u>Id.</u> at 2.  The petitioner also requests post-judgment interest.  <u>Id.</u> at 2.  The respondent has not filed an opposition to the petitioner's motion.  <u>Id.</u>

## II.   STANDARD OF REVIEW

When a defendant fails to defend against a case or otherwise engages in dilatory tactics, the plaintiff may invoke the Court's power to enter a default judgment by first seeking the entry of a default.  <u>See</u> Fed. R. Civ. P. 55(a); <u>Peak v. District of Columbia</u>, 236 F.R.D. 13, 15 (D.D.C. 2006) (citing <u>Keegel v. Key West & Caribbean Trading Co.</u>, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980)); <u>see also</u> <u>Jackson v. Beech</u>, 636 F.2d 831, 836 (D.C. Cir. 1980) ("The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." (citation and quotation marks omitted)).  The Federal Rules of Civil Procedure provide for the entry of a default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  Rule 55 sets forth a two-step process for a party seeking a default judgment: entry of a default, followed by entry of a default judgment.  <u>See id.</u>; <u>Jackson</u>, 636 F.2d at 835; <u>see also</u> 10A Charles Alan Wright et al., <u>Federal Practice & Procedure</u> § 2682 (3d ed. 2008) (stating that, before "obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)").  Thus, when a defendant has failed to respond to pleadings or otherwise defend against an action, the plaintiff may request that the Clerk of the Court enter a default against that defendant.  Fed. R. Civ. P. 55(a).  Once the Clerk enters the default pursuant to Rule 55(a), Rule 55(b) authorizes either the Clerk or the Court to enter a default judgment against the defendant.  <u>Id.</u> 55(b).

Despite a plaintiff's ability to acquire a judgment by default, there are "strong policies favoring the resolution of genuine disputes on their merits."  <u>Jackson</u>, 636 F.2d at 835; <u>see</u> <u>Peak</u>,

236 F.R.D. at 15 (acknowledging the inherent unfairness of awarding judgment against a party for mere filing delays). However, while courts do not favor default judgment and will only resolve cases in this manner "when the adversary process has been halted because of an essentially unresponsive party[,] the diligent party must be protected lest [it] be faced with interminable delay and continued uncertainty as to [its] rights." Teamsters Local 639-Emp'rs Health Trust v. Boiler & Furnace Cleaners, Inc., 571 F. Supp. 2d 101, 107 (D.D.C. 2008) (first alteration in original) (citing Peak, 236 F.R.D. at 15; Jackson, 636 F.2d at 836).

## III. LEGAL ANALYSIS

### A. Whether Confirmation of the Arbitral Award Is Warranted

The petitioner argues that the New York Convention requires this Court to confirm the Final Award issued in this case. Pet'r's Mem. at 3. The Federal Arbitration Act codifies the New York Convention, a multilateral treaty, which addresses "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." New York Convention, Art. I. The Federal Arbitration Act authorizes the recipient of a foreign arbitral award that falls under the New York Convention to seek enforcement in a federal district court. 9 U.S.C. § 203. The Act is "[c]onsistent with the 'emphatic federal policy in favor of arbitral dispute resolution,'" Belize Soc. Dev., Ltd. v. Gov't of Belize, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985)), and "affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards," Belize, 668 F.3d at 727.

A federal district court "shall confirm" an arbitral award that falls under the New York Convention "unless it finds one of the grounds for refusal or deferral of recognition or

enforcement of the award specified in the said Convention."  9 U.S.C. § 207 (emphasis added);

see TermoRio S.A. E.S.P. v. Electranta S.P., 487 F.3d 928, 935 (D.C. Cir. 2007) (quoting Yusuf

Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 23 (2d. Cir. 1997)) ("'[T]he

Convention is equally clear that when an action for enforcement is brought in a foreign state, the

state may refuse to enforce the award only on the grounds explicitly set forth in Article V of the

Convention.'").  Article V of the New York Convention sets forth the following grounds on

which a district court may refuse to enforce a foreign arbitral award:

> 1.  Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>
> (a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognize and enforced; or
>
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
>
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.
>
> 2.  Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

> (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
>
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention, Art. V, ¶¶ 1-2.

Here, none of the grounds for refusing to enforce the arbitral award apply. Neither the petitioner nor the respondent was under any incapacity and the Award was valid under the laws of Switzerland. See 2013 Camp Decl., Ex. 2 (Final Award) ¶¶ 90, 566. The respondent had proper notice of the arbitration proceedings; indeed, it was the respondent who sought arbitration in the first place. See Petition ¶ 20. The arbitration award addresses only those disputes that were submitted to arbitration. See 2013 Camp Decl., Ex. 2 (Final Award) ¶ 565. The arbitral procedure and the composition of the arbitral authority accorded with the agreement entered into by the petitioner and the respondent. See 2013 Camp Decl., Ex. 2 (Final Award) ¶¶ 8, 12. The Final Award is binding on the parties. 2013 Camp Decl., Ex. 2 (Final Award) ¶ 566. And finally, the subject matter of the dispute is capable of settlement by arbitration under the laws of the United States and the enforcement of the arbitral award is not contrary to the public policy of the United States. See Mitsubishi, 473 U.S. at 631 (noting the United States' "emphatic federal policy in favor of arbitral dispute resolution"). Because none of the grounds for refusing to enforce the award exist here, the Court concludes that confirmation of the Final Award is appropriate and that the respondent must pay the petitioner $999,450.32 in accordance with that Award.

### B. The Petitioner's Request for Attorney's Fees

The petitioner requests an award of attorney's fees and costs incurred in the prosecution of this action. Pet'r's Mem. at 5. It has filed the declaration of its local counsel, Charles H.

Camp of the Law Offices of Charles H. Camp, P.C., in support of its requests. See generally January 14, 2014 Declaration of Charles H. Camp ("2014 Camp Decl."). The petitioner represents that its counsel, both local and foreign, has accrued $35,712.93 in attorney's fees and expenses in the prosecution of this action since the Final Award was issued, Pet'r's Mot. at 6, and requests $26,784.69, which equals 75% of the total attorney's fees and expenses incurred in the prosecution of this action, id. at 2.

Neither the New York Convention nor the Federal Arbitration Act expressly address whether courts may award attorney's fees accrued in a proceeding to confirm a foreign arbitral award. But "it is well settled that the Court retains inherent power to assess attorneys' fees 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Concesionaria Dominicana de Autopistas y Carreteras, S.A. v. Dominican State, 926 F. Supp. 2d 1, 2 (D.D.C. 2013) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991) and citing United States v. Wallace, 964 F.2d 1214, 1218 (D.C. Cir. 1992)). And although this Circuit has not addressed the application of these principles in the context of foreign arbitral awards, a former member of this Court held "that a party seeking to confirm a foreign arbitral award under the New York Convention may recover reasonable attorneys' fees and costs, at least where the respondent unjustifiably refused to abide by the arbitral award." Id. (citing Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc., 665 F.3d 1091, 1104 (9th Cir. 2011) ("We hold that federal law permits an award of attorney's fees in an action under the Convention, as it does in other federal question cases.")); see also Leon Trading SA v. M.Y. Shipping Private Ltd., No. 10 Civ. 129(PGG), 2010 WL 2772407, at *4 (S.D.N.Y. 2010) (granting petitioner's request for attorney's fees in arbitration case where the

"[r]espondents failed to submit opposition papers to the Petition"); Celsus Shipholding Corp. v. Manunggal, No. 06 Civ. 13598(DLC) 2008 WL 474148, at *2 (S.D.N.Y. 2008) (same).

Included with Mr. Camp's declaration as attachments are the billing statements of the petitioner's Swiss counsel, MCE Avocats, and the billing statement of the petitioner's local counsel, the Law Offices of Charles H. Camp, P.C.  See 2014 Camp Decl. ¶¶ 3-4; 2014 Camp Decl., Ex. A (MCE Avocats billing statement) at 7, 11, 14 (statements for CHF 3,260.30, CHF 5, 263.60, and CHF 1,143.45); 2014 Camp Decl., Ex. B (Law Offices of Charles H. Camp billing statement).  The declaration represents that Mr. Camp's normal hourly billing rate is $600, which he "believe[s] . . . is a relative bargain here in Washington, D.C. given [his] 30+ years of experience handling complex commercial and international disputes."  Id. ¶ 6.  Although he has "expended over 40 hours on this matter," he has "agree[d] to work to confirm the Final Award in this Court and to pursue post-judgment discovery from Respondent for a fixed fee of $25,000, including expenses," which to date, are $876.66.  Id. ¶¶ 5-7.  Further, the Award expressly orders that "[the respondent] shall bear . . . 75% of [the petitioner's] legal fees."  2013 Camp Decl., Ex. 2 (Final Award) ¶ 565(f).  Accordingly, finding that the fees set forth in the 2014 Camp declaration and the attachments are reasonable and that the petitioner is entitled to an award of 75% of the attorney's fees and costs incurred in the prosecution of this action, the Court awards the petitioner $26,784.69 for those expenses.

### C.  The Petitioner's Request for Post-Judgment Interest

The petitioner additionally requests "post-judgment interest as allowed by law."  Pet'r's Mot. at 2.  Although the Federal Arbitration Act provides no guidance, a generally applicable federal civil statute provides that post-judgment "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a) (2012) (emphasis

added).  And while this Circuit has not directly addressed the issue, other federal circuits, as well as another member of this Court, have held that civil judgments confirming foreign arbitral awards are subject to § 1961.  See Tricon Energy Ltd. v. Vinmar Int'l, Ltd., 718 F.3d 448, 457 (5th Cir. 2013) ("A judgment confirming an arbitration award—like any other civil judgment—is subject to § 1961."); Ministry, 665 F.3d at 1102 ("the plain language of § 1961 . . . is mandatory, not discretionary"); Global Distressed Alpha Fund I LP v. Red Sea Flour Mills Co. Ltd., 725 F. Supp. 2d 198, 203 (D.D.C 2010) (same).  The Court agrees with the conclusion reached by these courts and therefore finds that awarding post-judgment interest is appropriate and that the petitioner is entitled to post-judgment interest at the rate set forth in 28 U.S.C. § 1961.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant the petitioner's motion for entry of default judgment, confirm the foreign arbitral award in the amount of $999,450.32, grant its requests for an award of $26,784.69, which amounts to 75% of the attorney's fees and costs incurred in prosecuting this action, as well as its request for post-judgment interest at the rate set forth in 28 U.S.C. § 1961, and order the respondent to pay forthwith the total amount of the judgment awarded to the petitioner.[3]

**SO ORDERED** this 23rd day of June, 2014.

REGGIE B. WALTON
United States District Judge

---

[3] An Order consistent with this Court's Memorandum Opinion shall be contemporaneously entered herewith.